UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

| | |
|---|---|
| Hon. Michael B. Kaplan<br>United States Bankruptcy Judge | 609-989-0478<br>609-989-2259 Fax |

January 27, 2009

Joseph M. Cerra, Esq.
Forman Holt Eliades & Ravin LLC
80 Route 4 East
Paramus, NJ 07652
Attorney for Plaintiff, Lion Financial LLC

Charles R. Jacob III, Esq.
Miller & Wrubel, P.C.
250 Park Avenue
New York, NY 10177
Attorney for Defendant, Specialized Loan Servicing, LLC

  Re: Lion Financial, LLC v. Specialized Loan Servicing LLC
     Ad. Pro. No.: 08-1666

Dear Counsel:

  The Court has heard oral arguments and has reviewed the submissions filed in the above referenced matter.  The Court issues the following ruling:

  The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court.  This matter comes before the Court by way of a Motion for Summary Judgment Dismissing the Complaint filed by Specialized Loan Servicing LLC ("SLS") and a Cross Motion for Partial Summary Judgment On Counts One Through Three of the Complaint filed by Plaintiff, Lion Financial, LLC ("Lion").  Both SLS and Lion filed additional pleadings in response to the Motion and Cross Motion.  A hearing on the Motion and Cross Motion was held December 22, 2008.

  The Court treads lightly in its attempt to summarize the facts of this matter, as the record is both unclear and ambiguous.  Briefly, the Debtor, Lancaster Mortgage Bankers, LLC ("Lancaster") was a New Jersey-based mortgage company that originated, owned and sold mortgages. SLS performed mortgage loan servicing for Lancaster pursuant to an Interim Subservicing Agreement dated April 13, 2005.  The Interim

Subservicing Agreement required SLS to deposit all monies received into a custodial bank account which SLS maintained on behalf of Lancaster. In this regard, SLS performed mortgage loan subservicing for a first mortgage which was originated by Lancaster and made to Robert L. Braatz, Jr. (the "Braatz One Loan")[1], secured by a first lien on property at 3357 Columbine Street, Denver, Colorado (the "Property"). The Braatz One Loan subsequently was sold to IndyMac Bank, FSB ("IndyMac") on March 24, 2006. Subsequently, Mr. Braatz defaulted on the loan and it is clear that Lion's funds were used to purchased Braatz One from Indymac pursuant to Lancaster's repurchase obligation. However, it is unclear whether Lion had financed Lancaster's repurchase from Indymac, or had purchased Braatz One directly from Indymac itself. In either case, the parties agree that Lancaster continued as servicer, thereby having SLS continue as subservicer.

Ultimately, SLS foreclosed the mortgage on the Property, and as a result, title was transferred to Lancaster (though neither of the parties at oral argument knew the identity of the plaintiff in the foreclosure action). Thereafter, Lancaster transferred title to the Property to a third party, Tim Habib, on August 14, 2007 for a gross sale price of $199,900. The net proceeds of the sale, $185,408.63, were deposited in the custodial account maintained by SLS for Lancaster. At issue in this adversary proceeding is the action taken by SLS to setoff amounts due it under the Interim Subservicing Agreement, as permitted by the Interim Subservicing Agreement, notwithstanding that Lion was the current owner of the Braatz One Loan.

Lion maintains that prior to the sale of the Property, it had informed SLS of the sale of the Braatz One Loan, and, thus, the funds should not have been deposited in the custodial account. SLS counters, however, that it never received notice of the sale, consistent with the notice requirements set forth in the Interim Subservicing Agreement. Lion filed an adversary proceeding seeking, among other things, to recover funds collected by SLS. SLS filed the instant Motion seeking to dismiss the Complaint, and Lion thereafter filed a Cross Motion for summary judgment on the first three counts of the Complaint. For the reasons set forth below, both the Motion and Cross Motion are denied.

Summary judgment is appropriate where " the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has indicated, "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106

---

[1] A second mortgage loan to Mr. Braatz was also originated by Lancaster. This loan is not at issue herein.

S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632, 637 (3d Cir.1993). This matter presents several genuine issues for trial.

It is somewhat telling that the core factual recitations in each of the Rule 56.1 Statements of Undisputed Facts submitted by the parties are highly contested. The Court's review of the parties' pleadings reveals several genuine issues of material facts in this matter, barring resolution by summary judgment. The factual inconsistencies range from small matters, like dates, to more substantive and complex issues. While both parties claim an equitable entitlement to the funds, the Court cannot envision a proper resolution of the issues without further factual development focused on the following areas of inquiry:

- What was the extent and nature of the business relationship between Lion and SLS prior to origination of the Braatz One Loan?
- Which entity served as the plaintiff in the foreclosure action on the Braatz Property?
- Did Lion purchase the Braatz One Loan from Indymac, or simply provide warehouse lending on Lancaster's behalf?
- What was the nature of the relationship between The Winter Group and SLS?[2]
- Were the employees of The Winter Group agents of SLS?
- Did Lion send and/or SLS receive any additional correspondence or communications prior to Dr. Field's letter of August 23, 2007?
- Did SLS have actual notice that Lion was the owner of the Braatz One Loan?
- What involvement did Lancaster have in the chain of title of the Braatz One mortgage?
- Who collected payments and otherwise serviced the Braatz One Loan prior to default?
- Did Lion receive any of the mortgage payments prior to default?
- Did Lion undertake any servicing efforts with respect to the Braatz One Loan?
- Was Lion aware that either SLS or Lancaster prosecuted a foreclosure action with respect to the Braatz One Loan? If so, did Lion authorize such action?

By no means is this list exhaustive. The parties filed numerous pleadings contesting each

---

[2] At oral argument, Dr. Field, on behalf of Lion, advised the Court that the Winter Group, besides having an ownership interest in SLS, also has acquired a majority ownership interest in Lancaster; yet, to the Court's astonishment it appears from information gleaned quite accidently by the Court from the internet, that there may indeed be a relationship between Lion and Lancaster as well. All of which needs to be flushed out before the Court can weigh properly the equities in this case.

other's version of the facts.  A fair reading of the record provides little clarity and, frankly, only produces more questions.  Thus, the Court is precluded from entering judgment as a matter of law.  An appropriate Order shall be entered by the Court.

This matter is currently scheduled for a pre-trial hearing on 2/23/09 at 10 am.

Very truly yours,

Honorable Michael B. Kaplan
United States Bankruptcy Judge

cc: Steven Mitnick, Esq.